```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3
     UNITED STATES OF AMERICA              )
 4                                         )
     v.                                    )    NO. H-17-CR-516
 5                                         )
     WALTER FREEMAN JORDAN, III, et al.    )    October 17, 2017
 6

 7
                           MOTION HEARING
 8              BEFORE THE HONORABLE KEITH P. ELLISON

 9

10

11   For the Government:       Richard D. Hanes, AUSA
                               Heather R. Winter, AUSA
12                             U. S. Attorney's Office
                               1000 Louisiana, Suite 2300
13                             Houston, TX 77002

14   For Defendant Jordan:     Neal Davis, III
                               Law Offices of Wendell Odom &
15                               Neal Davis, III
                               440 Louisiana, Suite 200
16                             Houston, TX  77002

17   For Defendant Loring:     Andre Wheeler
                               Attorney at Law
18                             11106 Veterans Memorial
                               Suite D
19                             Houston, TX  77067

20   For Defendant Anderson:   Lori Botello
                               The Botello Law Firm
21                             21175 Tomball Pkwy, Suite 453
                               Houston, TX  77070
22
     For Defendant Santee:     Thomas Brent Mayr
23                             Law Office of Brent Mayr, PC
                               5300 Memorial Drive, Suite 750
24                             Houston, TX  77002

25
```

```
 1    For Defendant Wise:          Quentin Tate Williams
                                   Hilder & Associates, P.C.
 2                                 819 Lovett Blvd.
                                   Houston, TX 77006
 3
      For Defendant Pace:          Frank Aguilar
 4                                 Attorney at Law
                                   1001 Texas Avenue, Suite 1400
 5                                 Houston, TX  77002

 6    For Defendant Bonner:        R. Trent Gaither
                                   Law Office of Trent Gaither
 7                                 5111 Center Street
                                   Houston, TX  77007
 8
      Court Reporter:              Bruce Slavin, RPR, CMR
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
      Proceedings reported by mechanical stenography and produced
25    by computer-aided transcription.
```

```
 1          THE COURT:  Thank you.  Please be seated.
 2               We'll turn to the United States v. Jordan,
 3   Loring, Anderson, Santee, Wise case -- Bonner.  We'll take
 4   appearances of counsel beginning with the government.
 5          MS. WINTER:  Good afternoon, Your Honor.  Heather
 6   Winter and Richard Hanes for the United States.
 7          THE COURT:  Thank you.
 8          MR. DAVIS:  Good afternoon, Your Honor.  Neal Davis
 9   for Walter Jordan.
10          MR. AGUILAR:  Frank Aguilar for Mr. Pace.
11          MR. WHEELER:  Andre Wheeler for Jaylen Loring, who
12   has waived their appearance today.
13          THE COURT:  One more time, please.
14          MR. WHEELER:  Jaylen Loring has waived her
15   appearance here today.
16          MR. WILLIAMS:  Tate Williams for Johnathon Nico
17   Wise.
18          THE COURT:  Thank you.
19          MR. MAYR:  Brent Mayr for Deandre Santee.
20          MR. BOTELLO:  Lori Botello for Daryl Anderson.
21          THE COURT:  Thank you.
22          MR. GAITHER:  Good afternoon, Your Honor.  Trent
23   Gaither for Mr. Bonner.
24          THE COURT:  Is that everyone?
25          MR. DAVIS:  I believe it is, Your Honor.
```

14:39 (line 5)
14:39 (line 10)
14:40 (line 15)
14:40 (line 20)
14:40 (line 25)

1          THE COURT:  Am I correct that all the clients are

2     present except one who is dealing with a medical problem?

3          MR. AGUILAR:  That's correct, Judge.

4          MR. GAITHER:  Yes, Your Honor.

14:40  5          THE COURT:  No problem with proceeding with that

6     defendant absent?

7          MR. AGUILAR:  No problem, Judge, with Mr. Pace.

8          THE COURT:  I just want to make sure nobody is

9     going to register an objection.

14:40  10          We have one defendant who is not present.  Is

11     that a problem for anyone?

12          MR. AGUILAR:  No objection.

13          MR. DAVIS:  No, Your Honor.

14          MR. GAITHER:  No objection.

14:40  15          THE COURT:  Okay.  We have proposed motions to

16     sever, opposed motions to continue trial, opposed motions to

17     certify case as complex.

18          I will start with the government.

19          MS. WINTER:  Your Honor, I guess in the order --

14:41  20     You see all of the written responses as well as our opposed

21     motion to certify as complex.  As you can tell from the

22     certificates of conference with respect to the motion to

23     certify as complex, the majority, six out of seven, are

24     unopposed to this particular motion.

14:41  25          Given that this particular case involved

1   extensive surveillance of Mr. Jordan prior to the date of

2   the robbery -- On the date prior to the robbery, there was

3   several officers who were not only tracking his phone and

4   his vehicle but were tracking him into the Katy area while

14:41   5   he surveilled the bank that they ultimately all robbed on

6   July 25th, 2017.

7           They took three different vehicles occupied by

8   all seven of these defendants and they drove to the Katy

9   area in tandem.  They then robbed the bank.  They conducted

14:42   10   heat runs or countersurveillance around the bank prior to.

11   All this is being surveilled by the officers on the scene --

12   numerous officers, at least 20 officers.

13           They were then -- The First Community Union

14   was robbed while the other lookout vehicles had a line of

14:42   15   sight to this First Community Credit Union.

16           All of the vehicles were traffic-stopped

17   thereafter.  The occupants were taken into custody.

18           The occupants of the Toyota Tundra led police

19   on a high-speed chase.

14:42   20           Therefore, numerous --

21           THE COURT:  Okay.

22           MS. WINTER:  Yes, Your Honor.

23           THE COURT:  Let me hear the argument against

24   certifying the case as complex.

14:42   25           MR. DAVIS:  Your Honor, was I -- I think I was the

1    only person who -- on behalf of Mr. Jordan to oppose

2    complexity.

3              THE COURT:  Okay.  Let me hear from you, then.

4              MR. DAVIS:  Your Honor, this is a simple bank

14:42   5    robbery.  I understand there may be a lot of evidence in

6    this, there may be a lot of surveillance, there may be lots

7    of witnesses in this, but that doesn't necessarily make the

8    case complex.  This is a simple bank robbery.

9                   Of course, we're also the ones who are

14:43  10    opposing the continuance.  I think that there's absolutely

11    no reason for this case to be considered complex when it's

12    just a simple bank robbery.

13                   Now, I know the government has mentioned that

14    Mr. Jordan was under surveillance before and there may be a

14:43  15    large amount of surveillance concerning Mr. Jordan.  That's

16    404(b).  I don't think that has anything to do with the

17    robbery at hand.  So --

18              THE COURT:  Okay.  Thank you.

19                   You make good points, but consistent with my

14:43  20    previous practice --

21                   Do you want to say something?

22              MR. MAYR:  Your Honor, only because I am also

23    opposed on the motion to certify as complex.  I'm Brent Mayr

24    for Mr. Santee.

14:43  25                   The government started off their case by

1   saying that there's all this evidence prior to the robbery,

2   but, as the investors told my client at the very beginning

3   of the interview, he was never on their radar screen prior

4   to the day of the robbery.

14:43   5            So, again, this is just a simple bank robbery

6   case, at least for my client, Mr. Santee, and that is why we

7   are opposing the motion, Your Honor.

8            Thank you.

9            THE COURT:  Yes.

14:44   10           MS. BOTELLO:  And I just want to add in addition.

11   Lori Botello.

12           In the certificate of conference I did not

13   respond; so, they presumed that I was opposed.  And we join

14   in the arguments of counsel in being opposed.

14:44   15           THE COURT:  Thank you.

16           If I am at all consistent with past practice,

17   this case does deserve to be certified as complex because

18   there are multiple defendants and a lengthy time span.

19           If I do grant the motion to sever, then we'll

14:44   20   consider whether any of those cases that are severed also

21   deserve to be certified as complex or not.  So, I am going

22   to grant that motion.

23           We have motions to sever.  And because I am

24   certifying as complex I am going to continue the trial date.

14:44   25           All these motions to sever -- I guess I need

1    to hear from defendants on that.  So, in whatever order you

2    want to go.

3                  Yes, sir.  Why don't you approach.

4             MR. WILLIAMS:  Tate Williams for Mr. Wise.

14:45    5             I filed the first motion to sever, which Your

6    Honor has, and the basis for the motion was under Rule 14,

7    that there is a serious risk that he will be substantially

8    prejudiced by -- in such a way that it compromises a

9    specific trial right and causes him to -- causes or prevents

14:45   10   the jury from making a reliable judgment.

11                 Now, that sounds complex, but it's really --

12   the resolution is simple.  The government can commit to not

13   introducing evidence of the lead defendant, Mr. Jordan's

14   prior bank robberies or that they believe he was involved in

14:45   15   prior bank robberies.  That's the whole basis of my motion.

16   Although they haven't given formal notice yet, we can

17   reasonably anticipate that they are going to try to

18   introduce that evidence under 404(b).

19                 We understand that the surveillance that was

14:45   20   described to you by the other lawyers was only occurring

21   because he was a person of interest in previous bank

22   robberies.

23                 At the detention hearing the four defendants

24   that we're alleged to have been in the Tundra put their

14:46   25   identification in issue.  As you well know, that's one of

1    the per se exceptions under 404(b).  So, I don't think I am

2    going out on a limb by anticipating that they may try to

3    introduce his prior bank robberies or suspicion of him

4    involved in prior rank robberies into this case.

14:46    5         The reason that prejudices my client is my

6    client was incarcerated -- Mr. Wise -- in the Texas

7    Department of Criminal Justice Institutional Division for

8    aggravated robbery.  That's not admissible unless he

9    testifies and, then, only for impeachment purposes.

14:46    10         Your Honor, if the evidence of his half

11   brother, the lead defendant, Jordan Wise -- I mean -- excuse

12   me -- Walter Jordan was involved in prior bank robberies --

13   as it comes before a jury, it's going to prejudice my

14   client, Mr. Wise, unfairly because, number one, his alibi is

14:47    15   that he was in prison.  If I confront and cross-examine any

16   witnesses that bring up Jordan's 404(b)s with that, then I

17   have prejudiced my client because they'll know  a) he is a

18   convicted felon  b) he was convicted of robbery, which they

19   otherwise wouldn't know unless he hit the witness stand.

14:47    20   So, that limits my ability to cross-examine him.

21         And, if I do do it, it prejudices him because

22   I have invited in 404(b) against my own client even though

23   it's not a bank -- it's not probably admissible otherwise

24   under any theory.

14:47    25         So, then the alternative is that, if you just

```
         1    give a limiting instruction, the jury is going to know that

         2    these gentlemen are half brothers.  So, he's going to be

         3    prejudiced by inference that, well, unlike Mr. Santee or

         4    someone else who may not have known about his prior bank

14:47    5    robberies, it's his brother; of course he knew and he

         6    decided to go along this time.

         7              So, the inference that a jury may draw from

         8    that evidence of prior suspected bank robberies by

         9    Mr. Jordan will unduly prejudice.  It's a serious, beyond-

14:48   10    substantial risk to my client that he's prejudiced by bank

        11    robberies that could come in under 404(b), that there is no

        12    way that he could have been involved in because he was

        13    incarcerated.

        14              THE COURT:  Okay.  Thank you.

14:48   15              Let me hear from the government and then we'll

        16    go to the next defendant who wants to sever.

        17              MS. WINTER:  Yes, Your Honor.

        18              As to -- One, I think this motion is not only

        19    premature, but it also is assuming a lot of facts that

14:48   20    aren't charged, that aren't in evidence at this point.

        21              The government is not ready to state on the

        22    record or represent to this court that it will not seek

        23    404(b) against Walter Jordan or any of the other defendants

        24    for that matter or that we may not charge other crimes as to

14:48   25    Walter Jordan or other defendants in this matter.
```

```
 1              But the fact that we're moving for severance
 2    at this early stage, when none of that is before the Court
 3    at this point --
 4              THE COURT:  When would be the right time to move
 5    for severance?
 6              MS. WINTER:  Well, Your Honor, at this point, there
 7    is nothing -- there's nothing charged.  There is no 404(b)
 8    notice out there.  There's no indication of other things
 9    that -- we don't plan.  And that's what we told Mr. Williams
10    and Ms. Botello, is that we don't intend, at this time, to
11    charge anything else, and we don't have any 404(b) evidence
12    or information to offer them at this time, Your Honor.
13              But, even if Mr. Jordan were involved in other
14    bad acts prior to this bank robbery, there are limiting
15    instructions to handle -- there is an exact Fifth Circuit
16    pattern jury charge to handle this exact situation.
17              This particular crime was all committed in a
18    continuous course and stream.  It does not make any sense
19    for the sake of judicial economy or for the sake of proving
20    this crime to sever these defendants out solely because the
21    lead defendant may have been involved in other crimes.
22              But, again, Your Honor, I believe it's
23    premature.  We're not willing to say that we're not going to
24    charge anything.  But, at the same time, there is no spill-
25    over effect to even talk about at this point because there
```

1    is nothing on the books that we intend to offer against this

2    defendant and certainly nothing that can't be dealt with

3    with a limiting instruction that's provided to Your Honor by

4    the Fifth Circuit.

14:50    5              THE COURT:  Mr. Williams.

6              MR. WILLIAMS:  Judge, I just wanted to add -- and I

7    didn't mention this -- that I was careful to point out in my

8    motion that we anticipated that because we had a motions

9    deadline -- ordinarily, I would file this later in the game,

14:50   10    but I was up against the motions deadline --

11             THE COURT:  I understand that.  I understand that.

12             MR. WILLIAMS:  Thank you.

13             MS. WINTER:  Yes, Your Honor.

14             THE COURT:  Ms. Botello, anything you want to add?

14:50   15             MR. BOTELLO:  Sure.

16                  I filed a motion for severance on behalf of

17    Daryl Anderson also because of the motions deadline that was

18    imposed.  I, usually, would have waited.

19                  But I just wanted to bring up, Your Honor,

14:50   20    that I filed this motion because Mr. Anderson is associated

21    with this bank robbery by being in another car and leaving

22    the Third Ward area and allegedly going down Katy freeway

23    20 something miles to Katy where this bank was located.

24                  And his right to call witnesses at his trial

14:51   25    would be limited if he were joined with these defendants in

1    a trial because he may want to call one of his co-defendants

2    to testify of their relationship, or lack thereof, at trial,

3    because it's our contention he hardly knows these people.

4    But he would not be able to do that if he is joined in a

14:51   5    trial with all of these defendants.  And we may not

6    necessarily call all of them.  It's early in the game to

7    make that decision, but it certainly is a possibility.

8          THE COURT:  Thank you.

9          MR. HANES:  Judge, Rick Hanes for the United

14:51   10   States.

11         Both motions are talking solely about

12   spillover effect and talking about potential testimony from

13   co-defendants.

14         As we put in our brief in opposition to the

14:52   15   motions to sever, there has been no showing by either

16   defendant at this point that there could ever be the

17   testimony of a co-defendant.  You can't just raise the

18   possibility and then get a severed trial as a result of

19   that.  You can't --

14:52   20         THE COURT:  Are you saying it's premature?  Is that

21   what you're saying?

22         MR. HANES:  Well, I have never actually seen a

23   co-defendant -- in 31 years, I have never seen a

24   co-defendant end up testifying for another.  Maybe I have

14:52   25   just been lucky, or unlucky, as the case may be.

1        However, it's not my burden.  The case law is

2  clear and we cited it in our memorandum of contract.  And I

3  would just say to the Court that raising the possibility

4  that 'It might be nice if somebody who was a co-defendant

14:53   5  were to testify on behalf of my client' -- that does not

6  satisfy the burden necessary --

7        THE COURT:  Okay.  I understand your point.  Thank

8  you.

9        Yes, sir.

14:53   10       MR. GAITHER:  Your Honor, if I might.  Trent

11  Gaither for Mr. Bonner.

12       And I just want to get on the record I do not

13  have a motion for severance, but I agree with those people

14  who say that this motion is premature.  From my perspective,

14:53   15  I just want to make sure that I don't waive on behalf of my

16  client --

17       THE COURT:  No.  This is too important an issue to

18  assert waiver.  No.

19       MR. GAITHER:  And the Court asked the question when

14:53   20  would be the proper time.  Well, under the filings to date,

21  I would suggest that the proper time would be at that point,

22  at least, when the government does commit to respond to the

23  motions to 404(b), that, hopefully, if the Court is going to

24  extend the filing deadlines as well as the trial date --

14:53   25       THE COURT:  Yeah, I am going to extend the filing

1    deadline.  Yes.

2            MR. GAITHER:  That's all I have, Your Honor.  Thank

3    you.

4            THE COURT:  Anybody else?

14:54    5            Okay.  What would be an appropriate extension

6    of the trial -- of the filing deadline?  Or does that depend

7    on the 404 from the government?

8            MR. DAVIS:  Well, Your Honor, I think, as far as

9    any motions deadline or anything, I think we may want to

14:54   10    address the motion to continue in and of itself.

11            THE COURT:  Well, I am going to grant the motion to

12    continue.

13            MR. DAVIS:  Well, Your Honor, if I may as well,

14    too.  We oppose the motion to continue because my client

14:54   15    wants his right to speedy trial.  And, at that point, since

16    we're talking about motions to sever, I would move to sever

17    from the other defendants based on his right to a speedy

18    trial, which I think would trump judicial economy; and, of

19    course, Your Honor, I could brief the issues on that as

14:54   20    well.

21            THE COURT:  Well, I know all defendants want to be

22    exonerated.  Is there a specific reason?  Is there something

23    else going on that he needs the trial completed by a date

24    certain?

14:55   25            MR. DAVIS:  Well, not any other reason than any

1    other defendant who feels has been unjustly --

2          THE COURT:  He wants to be exonerated.  I

3    understand that.

4          MR. DAVIS:  -- who wants to be exonerated, Your

14:55  5    Honor.  And that's the whole purpose of having the Speedy

6    Trial Act, a statutory right to a speedy trial, and

7    especially in the federal system.

8              And we're collecting the evidence as it comes

9    to us.  We'll be ready for a trial whenever the Court

14:55  10   determines a trial date within the 70 days from, I believe,

11   September 22nd, is when he was arraigned.

12             We just want it as quickly as possible, Your

13   Honor.

14          THE COURT:  Okay.  Thank you very much.

14:55  15            Anybody else on the issue of continuing the

16   trial?

17             Anybody else on the issue of severance?

18          MR. DAVIS:  Other than, if the Court grants the

19   motion to continue, we move for a severance and --

14:55  20         THE COURT:  Yeah.  I understand.

21          MR. GAITHER:  I would join the motion to sever

22   Mr. Jordan out from the other defendants, Your Honor.

23          THE COURT:  You don't need to make your motion to

24   sever now in order to preserve the right to severance.  I do

14:56  25   believe it's early.

1          Do you want to speak to the vulnerability of

2     this principal of a speedy trial?

3          MR. HANES:  Well, Judge, I think that's what the

4     statute relative to certifying a case as complex is for.

14:56    5          THE COURT:  When does the government think it could

6     be ready to try the case?

7          MR. HANES:  February, Judge.

8          MR. DAVIS:  Other than that, I'd ask for a trial

9     date sometime in December.

14:57   10          THE COURT:  The trouble with December is it's -- I

11     mean, it's not a great time for getting jurors to serve.

12     Even if you can impanel a jury, they often want to be

13     excused.

14          Let's see if we can find a trial date in

14:57   15     January.

16          MR. DAVIS:  And I make that suggestion, Your Honor,

17     of December without waiving our --

18          THE COURT:  Nobody is waiving anything.  These are

19     issues that are too important to invoke waiver.

14:57   20          We're going to aim for trial on January 16th.

21     The motion deadline will be 30 days in advance of the trial.

22          Anything else we can usefully do today?

23          Sir.

24          MR. WILLIAMS:  Judge, could we please set an

14:58   25     earlier 404(b) disclosure date so that --

1          THE COURT:  What can the government do on 404?

2          MR. HANES:  Judge, I don't understand why we would

3    have to set an earlier date than the response date necessary

4    to us to respond to motions.

14:58    5          It appears to me as if all defense counsel

6    have some indication or some knowledge -- they're afraid of

7    a specific thing, I would assume.  So, as long as we're

8    responding by the response deadline, I don't understand why

9    it would be necessary for us to go before that.

14:59   10          MR. WILLIAMS:  Judge, if there is not a 404

11   disclosure, then there's no need to file an additional

12   supplemental motion to sever.  It's a simple "chicken and

13   the egg" issue.  If they can commit to doing the disclosure

14   on 404(b) prior to our motions deadline, then that may

14:59   15   obviate the need for additional motions for severance.

16   Otherwise, we're going to have to come back for leave to

17   file a supplemental or additional motion.

18          MR. HANES:  Which is typical in any case, Judge.

19          THE COURT:  In this case, I don't think it's

14:59   20   inappropriate of the defendant to want an earlier 404(b)

21   deadline and I wouldn't think it would inconvenience the

22   government.

23          MR. HANES:  Judge, so that we're clear, though, in

24   the event that we develop 404(b) outside of that framework,

14:59   25   which is frequently the case when we start talking to people

1  who end up cooperating, would we be barred from --

2      THE COURT:  No.  You would petition the Court for

3  leave to file your additional 404(b) evidence and then we

4  would have a different response deadline and maybe a

15:00  5  different trial date.

6      MR. HANES:  And so -- Yes.  Basically, what I'm

7  saying is:  I don't see the need to set a date which, in

8  common practice, will end up being impractical, because we

9  generally find out more the closer we get to trial on these

15:00  10  things.

11      THE COURT:  Well, I think it's incumbent on the

12  government to accelerate the process somewhat.  These are --

13  We're talking about taking a substantial hunk of time from

14  the lawyers' schedules.  The defendants, I am sure, are

15:00  15  apprehensive about what awaits them.  I think the government

16  should do the work it needs to do so it can make the

17  appropriate disclosures.

18      MR. HANES:  And there is no question that we intend

19  to do that, Judge, my point being that it would take more

15:01  20  for the attorneys to have to respond twice rather than to

21  respond once.

22      And, again, I have not heard anything other

23  than the blanket statement that 'We want it earlier.'  I

24  have not heard any rational behind that.  I have not heard

15:01  25  any concrete statement, 'This is why we want it.'

1        MR. WILLIAMS:  Judge, as I began my argument, this

2   has a simple resolution.  We're not talking about some great

3   unknown mystery of 404(b).  We're talking about whether the

4   government is going to introduce evidence of the allegations

15:01   5   against Mr. Jordan in this trial.  They should know the

6   answer to that now.  We know about these.  There's been

7   evidence and testimony at the detention hearing.  They have

8   said it's premature now.

9        Why do they need additional time right up

15:02   10  until the edge of trial to make the decision as to that

11  stuff?  They have just said it's premature --

12       THE COURT:  My ruling will stand.  My ruling will

13  stand.

14       Is there anything else we can do today?

15:02   15       MR. HANES:  No, Judge.

16       THE COURT:  Thank you.

17

18                   COURT REPORTER'S CERTIFICATE

19       I, BRUCE SLAVIN, certify that the foregoing is a

20  correct transcript from the record of proceedings in the

21  above entitled matter, to the best of my ability.

22

23                                    *s/Bruce Slavin*
                                      _____
24                                    BRUCE SLAVIN, RPR, CMR

25